# Appeal of Emma E. Fross et al.
# Appeal of Dyer Loomis et al.

1. In the settlement of an intestate's estate his administrator claimed credit for a voluntary payment made to a member of decedent's household for alleged services rendered by her to the decedent before his death. In support of this payment, and to prove that the services had, in fact, been rendered, the payee was called as a witness, and the court below held her competent on the ground that, having been paid, she was no longer interested in the event. *Held* (reversing the ruling of the court below), that it was not a question of interest, but of public policy, according to which her testimony was inadmissible, and as the case fell within the proviso of the Act of April, 1869, she was not rendered competent by that Act to testify as to her claim for the benefit of the administrator.

2. Services rendered by one to the head of the family of which she was a member, who stood to her in *loco parentis*, do not raise an implied assumpsit to pay; the implication is rebutted by the relation of the parties. Nor will an express promise to recompense such services sustain an action, as an express promise cannot be supported by any executed consideration from which one would not be implied by law.

3. A gift is an executed contract, and must be accompanied by such a delivery of possession, according to its subject, as will make it irrevocable, and the evidence thereof, after the death of the donor, must be clear and satisfactory.
   The facts in this case *held* insufficient to constitute a gift *inter vivos*, or a *donatio mortis causa*.

4. Among the effects of A., a deceased administrator of B., was found a note of C. in favor of "A., administrator of B." This note was not scheduled in the inventory of B.'s estate, and was made nearly twelve years after his death, at a time when A. and C. were shown to have had numerous business transactions together. *Held*, that under the circumstances the auditor was justified in finding as a fact that the note in question did not belong to A., as administrator of B.'s estate, but to him individually.

5. Four years after the confirmation of a partial account an administrator received the amount of a judgment recovered on two notes of his intestate. Ten years afterwards the administrator died, and his administrator, in obedience to a citation, filed a final account, charging the accountant with the amount of the judgment then collected. *Held*, that the accountant should not be surcharged with interest on the judgment, as he had not claimed credit for the necessary expenses incurred in the collection of the debt.

6. In the absence of fraud or unfairness an administrator is entitled to reasonable commissions for his services, although he may have been negligent in the performance of them.

7. The confirmation of an administrator's partial account, not excepted to, is a definitive decree, and conclusive as to the matters contained in it

8. An administrator is not properly chargeable with the rents of his intestate's real estate. If he takes charge of real estate, and collects the rents thereof, he acts merely as agents for the heirs, nor does he bind himself as administrator by assuming to act in that capacity. His liability as administrator, and that of his sureties, is limited to the matters appertaining to his office.

9. If a claim is inventoried as "doubtful," and it be actually shown to be such at the time, the burden of proof is on him who alleges the contrary to prove that the claim could have been collected. It is the duty of the exceptant rather than that of the accountant to avail himself of the testimony of the debtor if he is within reach.

February 4, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL of H. A. Fross, Emma Fross, W. A. Blaine and Arthur E. Blaine from the decree of the Orphans' Court of *Erie county*, making distribution of the estate of E. W. M. Blaine, deceased: Of January Term, 1884, No. 21.

APPEAL of Dyer Loomis and W. E. Marvin, administrators of the estate of A. W. Blaine, deceased, from the same decree: Of January Term, 1884, No. 146.

These two appeals were argued together, and involved the same facts as follows: E. W. M. Blaine died October 31, 1858, at North East, Erie county, leaving three children, Wm. A. Blaine, A. E. Blaine, and Emma E. Fross, wife of Henry A. Fross. Letters of administration were granted to A. W. Blaine and Wm. A. Blaine on November 9, 1858, and an inventory of the personal property, amounting to $4260.06, was duly filed on December 7, 1858. This was sold at public sale, except some notes and judgments, amounting to $767.05. No vendue or sale list was filed by the administrator, as required by section 11 of the Act of February 24, 1834. W. A. Blaine never acted as administrator. On May 2, 1864, an account was filed by A. W. Blaine, styled a "partial account of A. W. Blaine, one of the administrators of E. W. M. Blaine, deceased." At the head of the account it was stated that "the amount of the inventory was $4,270.60; but as other money came into his hands not in the inventory, the administrator charges himself with all moneys received, and credits himself with all moneys paid as debts and to heirs, &c." A detailed statement of receipts followed, including notes to the amount of $946.26 unpaid, the whole amounting to $5,459.87, and also an itemized account of disbursements amounting to $3,610.34, leaving a balance in the hands of accountant of $1,849.53. This account was confirmed, nisi, August 5, 1864, and no exception having been filed it was finally confirmed on November 11, 1864. A. W. Blaine died

January 10, 1878, and on January 16, 1878, letters of administration were duly granted to Dyer Loomis and William E. Marvin, against whom, on November 12, 1878, a citation was issued, *sur* petition of Emma E. Fross, to file a final account of A. W. Blaine, as administrator of the estate of E. W. M. Blaine. In accordance therewith Loomis and Marvin filed the account of A. W. Blaine, in which they charged his estate with the balance shown by the partial account and other items amounting in all to $2,483.11, and claimed credit for $3,165.19, showing a balance due the accountant of $682.08. The items in dispute were:

1. The accountant claimed credit for the amount of $741 paid to Mrs. M. M. Glass for services rendered decedent under an alleged verbal direction of E. W. M. Blaine, given to A. W. Blaine about two weeks before his death, and while in his last illness, and which direction or request was to the effect that he, E. W. M. Blaine, wanted Mrs. Glass to have certain notes, amounting to $500, made by Harper or Harper & Co., or $500 in money when the notes were collected, in consideration of her services rendered to him during the time she had lived in the family. Mrs. Glass testified to her having heard this request made. The only proof of this transaction was the testimony of Mrs. Glass herself. As to the merits of the claim, the evidence was that Miss Harris, afterwards Mrs. Glass, went to live with E. W. M. Blaine when she was ten or eleven years of age; that she was treated and brought up by Mr. Blaine the same as his other children, and lived with him until he died, at which time she was twenty-one or twenty-two years of age; that Mrs. Blaine, wife of E. W. M. Blaine, was an invalid during the latter part of her life, and died two or three years before her husband; and that Mrs. Glass had charge of the house whenever Mrs. Blaine was unable to be around, during her lifetime, and entirely after her death, until the death of Mr. Blaine.

The auditor (E. L. Whittlesey, Esq.) admitted Mrs. Glass to testify, reporting as follows:

"The true test of interest is that she will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against her on some other occasion: 1 Greenl. Ev,, §. 390. It is quite true that Mrs. Glass, the witness, did have a claim against the estate at the time of the death of the intestate, but she had none at the time of giving her testimony, having received her pay in full, and it cannot be recovered back from her, she having received it under a claim of right: Morris *v.* Tarin, 1 Dall., 147; Carson *v.* McFarland, 2 Rawle, 118; Kennedy *v.* Hughey, 3 Watts, 265; Keener *v.* Bank, U. S., 2 Pa. St., 237; Natcher *v.*

Natcher, 47 Pa. St., 496. It has been held that a legatee in a will, who has been paid, is a competent witness to support the will in a suit at law: 1 Greenl. Ev., §§ 408, 420; McIlroy v. McIlroy, 1 Rawle, 433."

2. It was shown that A. W. Blaine held a note of Amos Gould for $500, dated January 28, 1860, payable one day after date to A. W. Blaine, administrator of the estate of E. W. M. Blaine. This amount was never accounted for by A. W. Blaine in his accounts. It was asked that the accountants be surcharged therewith. This the auditor refused to do, stating "there is no evidence that Mr. Gould was indebted to E. W. M. Blaine for this note at the time of his death. By reference to the note it will be seen that it is payable to the administrators of E. W. M. Blaine, deceased, and dated January 28, 1860. It is not in the inventory, and the auditor thinks it must have been given to secure the payment of money borrowed by Mr. Gould of the administrator of Blaine, deceased, and therefore declines to charge the accountant with it."

3. Two notes of J. C. Hays, one dated December 24, 1857, for $30.84, and another dated February 4, 1858, for $36.24 were charged in the original inventory filed and not accounted for in the partial account in 1864. It appeared that judgment for $74.71 had been recovered in the Common Pleas of Crawford county as of August Term, 1859. The judgment was receipted February 27, 1868, and at that date amounted to $110.77, with which sum the accountants were charged in the final account. The auditor refused to surcharge the accountants, as requested, with interest on this sum from February 27, 1868, for the reason: "The accountant has not claimed credit for any expense incurred in the collection of this debt, and as he had a right to retain a reasonable amount in his hands to pay expenses, etc., the auditor does not think he should be charged with interest from the date of the receipt of the money until the present time, as requested by exceptants. Davis' Appeal, 11 Harris, 206."

4. On April 1, 1856, E. W. M. Blaine and one Johnson entered into an agreement in writing with the heirs of P. S. V. Hamot, deceased, by which the latter agreed to convey a tract of land in North East to Blaine and Johnson in consideration of $2,800. Some $1,653.33 had been paid on this when Johnson assigned his interest in the contract to Blaine, who paid $260 more. After his death in 1858, A. W. Blaine paid on account $700, for which he was allowed credit in his partial account in 1864. A deed was made reciting payment of the consideration in pursuance of the contract on August 21, 1872. George W. Starr, who received the money and delivered the deed, could not give the date of the payment of the remainder

[Appeals of Fross and Loomis.]

of the purchase, amounting then to $325.95, but testified that it had been paid. The auditor therefore allowed the credit claimed for the payment to Starr by this amount.

5. The auditor allowed $250 as commissions to the administrator to which objection was made on the ground that he had acted fraudulently. On this the auditor reported: "The auditor can find no evidence of fraud in the case. If A. W. Blaine had lived and filed his account and failed to account for the items above mentioned, his conduct might have been considered fraudulent, so as to forfeit right to compensation; but as it is, his account is filed by the administrators of his goods after his death. They had no knowledge of these matters, so far as the evidence shows." "If Mr. Blaine had lived, he might have been able to explain what became of the notes and moneys, or, if he had filed his own account, might have charged himself with the full amount of the property and money unaccounted for in the partial account."

6. The auditor allowed a surcharge for a balance of principal and interest unpaid on a claim against Harper Ross & Co., dated April 10, 1851, for $392.74. In the partial account the administrator was charged with interest received thereon April 5, 1860, $100, April 28, 1864, $221.15, and as of the same date was charged as follows:

| | | |
|---|---|---|
| Harper Ross & Co., . . . . . . . . . . . . . | | $300.00 |
| This account the auditor re-stated as follows: | | |
| Note of Harper Ross & Co., April 10, 1851, . | $392.74 | |
| Interest to April 28, 1864, . . . . . | 307.53 | |
| | | $700.27 |
| Paid April 7, 1860, . . . . . . . . | $100.00 | |
| Paid April 28, 1864, . . . . . . . . | 221.15 | |
| Paid April 28, 1864, . . . . . . . | 300.00 | |
| | | $621.15 |
| Remainder April 28, 1864, . . . . . . | $79.12 | |
| Interest to July 11, 1879, . . . . . . | 72.17 | |
| | | $151.29 |

7. It was shown that the administrator leased a farm of decedent to one Johnson for five years at $200 a year, in all $1,000: of this he accounted for $300 in the partial account, and it was shown that he had received the balance. The auditor surcharged him with this sum with interest amounting to $410.34.

8. In the inventory a note of John R. French for $137.47 was marked doubtful and was not collected. The auditor reported that: "There is no evidence that they could have been collected, or that they have been paid to accountant. If so paid, it would have been easy to have proved the payment by

Mr. French, who is living, and a competent witness. He was not called. The burden of proof is on the exceptants, the debt being marked doubtful in the inventory. Reiff's Appeal, 2 Barr, 256."

Exceptions were filed by both parties to the auditor's report on the above questions and were dismissed by the court, except as to the surcharge in item eight above, the exceptions to which were sustained, GALBRAITH, P. J. filing the following opinion:

"In the inventory, notes of John R. French & Co. were marked 'doubtful.' The auditor in the absence of proof showing the money to have been collected, refused to charge the accountant with the amount, basing his decision mainly upon a remark of Judge ROGERS in Reiff's Appeal, 2 Barr, 256. But there is evidence that another person who held notes of French & Co., made about the same time, collected their full amount, and the notes not being found among the papers of the administrator, the burden of proof would appear to be on the accountants to show that the money was not received, especially as it appears from the evidence that French is living and within reach, so that his evidence could be had. This exception is sustained. The accountant should be charged with the amount of the French notes and interest.

"The next exception to be noticed is the refusal of the auditor to charge the accountants with the amount of a note executed by Amos Gould, and dated January 28, 1860, for the sum of $500. This note was made more than a year after the death of E. W. M. Blaine, and was payable to A. W. Blaine, administrator of E. W. M. Blaine, deceased. No such debt appears in the inventory, nor is there any proof that Gould was indebted to E. W. M. Blaine in any such sum in his lifetime. There is evidence that Amos Gould and A. W. Blaine had frequent business dealings, and the conclusion of the auditor that this note was merely the evidence of a temporary loan of money of the estate in his hands as administrator, seems to be fully justified by all the facts. This exception is therefore dismissed."

Whereupon Emma Fross et al., children of E. W. M. Blaine, deceased, took this appeal, assigning for error:

1, 2, 3, 4, 5. The reception of the testimony of Mrs. Glass in regard to the credit asked for the payment to her and the allowance of the same as in item 1 above.

6. The refusal of the auditor and the court to surcharge the accountant with the amount by the Gould note as in item 2 above.

7. The refusal of the auditor and the court to surcharge the accountant with the interest on the Hays' judgment as in item 3 above.

8. The allowance as a credit of the payment to G. W. Starr, for purchase money due the Hamot heirs as in item 4 above.

9. The allowance of $250 to the accountant as commissions as in item 5 above.

And Loomis et al., administrator of the estate of A. W. Blaine, deceased, took their appeal, assigning for error:

1. That all the exceptions filed to the account should be dismissed: " The auditor erred in not dismissing all the exceptions filed to the account, for the reason that the exceptants are estopped from contesting the account filed by A. W. Blaine May 2, 1864, said account purporting to be a full account of all moneys collected by him to that date, and the exceptants being then of full age or represented by guardians, and living in the same town with accountant during the whole time between the filing of said account and the death of accountant—about fourteen years."

2. The surcharge allowed for balance of principal and interest unpaid on claims against Harper Ross & Co., as in item 6 above.

5. The surcharge allowed for rent received by accountant of real estate belonging to his intestate's estate as in item 7 above.

7. The surcharge allowed for note of John R. French & Co., as in item 8 above.

*Benson* (with whom was *Brainerd*), for Fross et al., appellants in No. 21.

*Jno. P. Vincent* (with whom were *Allen & Rosenzweig*), for Loomis et al., appellants in No. 146.

Mr. Justice CLARK delivered the opinion of the court, April 7, 1884.

The first five assignments of error, in the first of these appeals, are to the allowance of a credit to the accountants for $741, paid by A. W. Blaine, as administrator of the estate of E. W. M. Blaine, deceased, to Mrs. Matilda M. Glass, formerly Matilda Harris, as per voucher No. 7.

It appears from the testimony, and by the report of the auditor, that Matilda Harris (now Matilda Glass), in the year 1848, when a child ten or eleven years of age, was taken into the family of E. W. M. Blaine, and there remained until the time of his death in 1858. She was not related to Mr. Blaine either by blood or marriage; her father was dead and her mother was poor; she was by Mr. Blaine during that time clothed, educated, maintained, and in all respects treated as a member of the family, and as his own child. The wife.

of Mr. Blaine was an invalid, and died two or three years
before the time of her husband's death; during her illness,
and after her decease, Matilda had charge of the house, and
conducted the domestic affairs of the household.

Matilda Glass was called as a witness, under objection, to
testify in behalf of the administrator, as to matters occurring
between E. W. M. Blaine and herself, in relation to, and in
support of, her claim for services, and also to prove payment
of the claim by the administrator. She testified as follows:—
"E. W. M. Blaine said he never could pay me for what I had
done for him, services I had rendered him; that his wife
wanted him to do by me the same as his other children; said
he had left notes, amounting to $500, with A. W. Blaine, to
be paid over to me when I wished it; they were against Har-
per & Co., or Harper I think; it was a week or two before
his death."

Q. "Do you know, personally, whether A. W. Blaine had
been there in conversation with E. W. M. Blaine that same
day?"

A. "He was there that morning." ..... "All that I
heard was that they were talking about the notes, and I heard
E. W. M. Blaine say that he wanted me to have these notes,
$500, when it was collected out of the notes."

The first question which arises, is as to the competency of
Matilda Glass to testify in support of her claim, which arose
out of matters occurring in the lifetime of E. W. M. Blaine,
to which he and the witness were the parties. As the claim
of the administrator is prosecuted against the estate of a
decedent, in an action or proceeding to which an adminis-
trator is a party, the case falls within the letter, as well as
the spirit, of the proviso to the Act of 1869. She is not ren-
dered competent by that Act, and therefore the question is
one to be determined under the law as it stood prior to that
statute.

Her claim had been paid by the administrator, and a volun-
tary payment, made without fraud or constraint, in ignorance
of the law merely, cannot be recovered back. Natcher *v.*
Natcher, 47 Pa. St., 496. It may be, therefore, that she was
not incompetent on the ground of interest; but she was the
original party to the claim, and the payment of it by the
administrator gave him the right to a credit for it on her
account, if it was a proper and just debt against the estate.
The payment being voluntary, she was without responsibility
for the event. She was incompetent, not on the ground of
interest, but because, from principles of public policy, it is
necessary to exclude her. Her receipt may not be considered
a technical assignment of the claim to the administrator, but

the case clearly falls within the principle announced in Graves *v.* Griffin, 7 Harris, 176; Bailey *v.* Knapp, Id., 192; Hatz *v.* Snyder, 2 Casey, 512, and other cases, that "whilst one of the parties to a contract in litigation is denied the privilege of testifying, the policy of the law is, to close the mouth of the other."

If Matilda Glass had transferred her claim to the administrator, or to any other person, bonâ fide, and for full consideration paid, it would not be pretended that she could testify in support of it, whether that was the purpose of the assignment or not. The authorities upon this point are numerous, and it is unnecessary to refer to them; her incompetency in such case, however, would not result from her interest, but would rest upon principles of justice and equality, as well as of policy. We cannot distinguish between the effects of a technical assignment made, and of a transaction such as here occurred between Matilda Glass and A. W. Blaine, the administrator. In both instances the original holders of the claim, we may assume, receive full consideration, are exempt from liability to refund, are devoid of interest in the result, have acted bonâ fide, and without intention of becoming a witness, and the effect in both, if the rule were not as stated, would be, by a simple transfer of right, to enable one party to a transaction, to support the validity of his claim by his own testimony, whilst his adversary, whether dead or alive, is denied the exercise of the same right. It matters little how the transfer is effected; it may be by an assignment or an endorsement, by mere delivery or by payment, as in this case; it is not the technical form of the transaction which governs or gives it effect. The witness was competent, of course, to prove payment, or any other matter not involving the original transaction. Where the reason of the rule ceases, the rule itself ceases. We are clearly of the opinion, therefore, that Matilda Glass was not a proper witness to support her own claim for the use and benefit of the administrator, and this practically disposes of this branch of the case, as the claim rests upon her testimony alone.

If, however, her testimony was competent for the purpose offered, we regard it as insufficient to establish any legal obligation against the estate of E. W. M. Blaine, deceased. Although, in general, proof of services rendered, or labor performed, by one person for another, raises an implied promise to pay, in this case the established relation of the parties repels the idea of a contract. Matilda Harris was a member of the family of Mr. Blaine; he was to her *in loco parentis,* she was treated as a child; the implication which would otherwise arise is thus fully rebutted. The transaction between

her and the decedent, a week or two before his death, cannot be regarded as a contract, as it lacks the essential element of a valid consideration. Although she was, as Mr. Blaine confessed, "a dutiful child" to him, and doubtless deserved not only his gratitude, but perhaps a more substantial reward, there was no legal obligation upon him to pay her anything; he owed her nothing more than he would have owed his own child, under the same circumstances, and, as a general rule, an express promise cannot be supported by any consideration, wholly past and executed, from which the law could not imply a promise.

Nor can the claim be sustained as a gift inter vivos. A gift is a contract executed, and must be accompanied with such a delivery of possession as makes the disposal irrevocable; the delivery must be according to the nature of the subject, and the donor must, in some form, relinquish not only the possession but all dominion over it. Where these essential requisites are complied with, the gift is perfect and irrevocable. After the decease of the alleged donor the transaction should be established by clear and satisfactory evidence.

Matilda Glass, the alleged donee, was at the time sui juris, and actually present, yet the notes were neither delivered into her personal control, nor were they assigned to her; indeed, the language used at the time was not such as necessarily to import a gift of the notes, as such. Mr. Blaine said "he had left notes, amounting to $500, with A. W. Blaine, to be paid over" to her when she wished it; he told A. W. Blaine "he wanted her to have the notes, $500, when it was collected out of the notes." A. W. Blaine was then the custodian of the decedent's papers, or some of them, and he subsequently became the administrator of his estate. The words of the decedent are altogether consistent with a mere agency, he "had left" or committed the notes to the custody of A. W. Blaine; if he should, at any time, change his mind, the notes were yet within his control. A. W. Blaine was the agent of the donor, and not a trustee for the donee. For the reasons already suggested, the claim could not be sustained as a *donatio causa mortis*.

It follows, therefore, that the payment to Matilda Glass was unauthorized, and the credit claimed as per voucher No. 7 must be disallowed. It would have been more agreeable for us to have been able to allow this claim, but the exceptants having raised the question as to the legal obligation of the estate, the responsibility rests with them; we pronounce upon it as a question of law. The abuses which are liable to result from any relaxation of these rules of law, requires a rigid adherence to their salutary provisions.

There may be instances when they appear to operate harshly, but the wisdom and policy of their general application cannot be doubted.

The remaining assignments are without merit, and are not sustained. The note of Amos Gould did not appear upon the inventory, and under the evidence we think the auditor was justified in finding that it belonged to the administrator. The action of the court below, refusing to charge interest on the Hayes notes, and allowing credit for payments to G. W. Starr, for the Hamot heirs, was certainly correct. The accountant's estate was also entitled to credit for commissions; he may have been negligent, and his estate, perhaps, suffers in consequence of that, but he seems to have acted in good faith, without fraud or unfairness.

In the appeal of Dyer Loomis and W. E. Marvin, administrators of A. W. Blaine, deceased, the first assignment of error raises the question of the conclusiveness of the decree confirming the account filed by A. W. Blaine, in his lifetime, on the 2d May, 1864. An administration account, which does not purport to be final, and which, upon its face, does not embrace the whole estate, is, of course, not a final one. Chambers' Appeal, 11 Pa. St., 436; but the confirmation of a merely partial account is a definitive decree, and is conclusive as to the matters embraced in it. Rhoads' Appeal, 39 Pa. St., 186. Such an account cannot, of course, be conclusive as to matters not included in it; it is simply conclusive as to such matters as have been adjudicated under it. Shindel's Appeal, 57 Pa. St., 43; Leslie's Appeal, 63 Pa. St., 355; McLellan's Appeal, 76 Pa. St., 231.

The account filed 2d May, 1864, purports on its face to be a "partial account" only. It is, therefore, only conclusive as to such matters as have been passed upon in it. The final account, afterwards filed and now under exceptions, plainly shows that the first was but partial, as it contains a number of charges for portions of the estate afterwards received. The first exception, in its general form, is therefore not sustained.

The second assignment, so far as it relates to the note of Harper, Ross & Co., we think is sustained. The note was dated April 10, 1857, and was for $392.74. The accountant, in his partial settlement, charges himself with amounts received thereon, as follows: April 5, 1860, $100; April 29, 1864, $221.15. The charge of $300, of the same date as the last item, being for the note unpaid, was for the uncollected balance. If this balance was wrong or incorrect, it should have been the subject of an exception to the confirmation of

that account; the decree was conclusive as to all matters adjudicated under it, and this included the Harper, Ross & Co. note. So far as the assignment relates to the note of Harper & Co., it has no merit.

The fifth assignment is sustained. The administrator was not properly chargeable with the rents of the real estate; they constitute no part of his account. The administrator, in taking charge of the realty and receiving the rents and incomes thereof, was merely the agent for the heirs. It is of no importance, whatever, that he assumed to transact the business in his capacity as an administrator; he was, in fact, but an agent. The liability of the administrator, and of his sureties, is, of course, limited to the matters appertaining to his office, and we cannot intermingle with these, transactions with which he had no concern, and in relation to which he had no duty to discharge.

We are of opinion, also, that the court erred in surcharging the accountant with the notes of John R. French & Co. In the inventory, these notes are marked "doubtful." Mr. J. S. Johnson, the only witness examined in relation thereto, states that he and E. W. M. Blaine had been partners; that at the dissolution they divided the notes, &c.; that he retained for himself one of the two notes of French & Co., and turned the other over to Blaine; that John R. French & Co., at that time, "were not considered real sound;" that when he went out of business French could not be compelled to pay, and that although he received his own note, after French got his office at Washington, he "don't know of any means by which French could have been compelled to pay after the dissolution." The effect of this evidence was, we think, to shift the burden of proof upon the exceptants. It is said, "French is alive and within reach." If so, it was rather the duty of the exceptants than the accountants, under all the circumstances of this case, to avail themselves of his evidence. The seventh assignment is therefore sustained. The remaining assignments are without merit, and are dismissed.

> The decree is therefore reversed, and the record is remitted to the Orphans' Court of Erie County, for further proceedings, in accordance with this opinion, the costs of the several appeals to be paid by the appellees respectively.