## Mary A. Maitland v. Elizabeth Greer, Appellant.

*Family relationship—Wages—Contract—Province of court and jury.*

Where a person is received into a family as a member of such family and not as a servant, as an object of charity and not as a hireling, the relation is never changed by legal implication into a relation giving a right to wages.

When, however, there is evidence tending to show a promise to pay claimant, " for all she did," then the question of the relation which plaintiff and defendant sustained to each other becomes a question of fact which comes within the province of the jury.

Argued May 12, 1898. Appeal, No. 178, April T., 1898, by defendant, from judgment of C. P. Lawrence Co., Sept. T., 1895, No. 55, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed. PORTER and ORLADY, JJ., dissent.

Assumpsit. Before WILSON, P. J., of the 36th judicial district, specially presiding.

It appears from the evidence that Elizabeth Greer and her father, Thomas Greer, lived together on the latter's farm in Lawrence county. Elizabeth was unmarried and kept house for her father from before January, 1881, until his death. In January, 1881, Elizabeth Greer, at the request of one, De Garmo, a poor man, who sought a place for his granddaughter, agreed with the grandfather that she would keep the child and as long as she kept her she would take care of her, clothe her and send her to school. Plaintiff continued to live with defendant until December 12, 1894, when she married and she and her husband remained with the defendant until June, 1895, when they moved away. It appears that Elizabeth Greer cared for the plaintiff, clothed and maintained her, sent her to school and church, taught her to knit and sew and do housework, and such work as was generally done by girls on a farm, paid her church stipend and treated her as a daughter. Plaintiff attended school, worked about the house, ate at the table with defendant and her father, and in all respects was treated by and acted towards defendant as a member of her family. She shared in all the work usually performed by a female member of a farmer's house

hold. Thomas Greer died April 10, 1891. After his death the plaintiff and defendant continued to live together in the same house and as alleged by the defendant bearing towards each other the same relation they had before his death. It was contended by the defendant that no contract for wages or compensation was at any time made between the parties to this suit. It did not appear that plaintiff kept an account of time or work done and no account was made of the clothing furnished or money given to or paid out for her. At the time she left defendant's house in June, 1895, she made no claim for wages or recompense until suit brought.

There was evidence on the part of plaintiff tending to show that after the death of Thomas Greer on April 10, 1891, the plaintiff remained on the same farm and in the same house under an arrangement and promise by which Elizabeth was "to pay her for all the work she did" and that she so continued to remain there until December 12, 1894, when she married.

The statement of claim was for a quantum meruit at the rate of $6.00 a week, amounting to $1,146 with interest from December 12, 1894.

Verdict and judgment for plaintiff for $271.80. Defendant appealed.

*Error assigned* was answer to defendant's seventh point, which point and answer are as follows: "7. Under all the evidence in this case the verdict must be for the defendant. *Answer:* This point is refused, as there is a question of fact for the jury to determine as to what the relation was that existed between the parties in this case."

*J. Norman Martin*, with him *D. B. Kurtz* and *L. T. Kurtz*, for appellant.—The court should have given binding instructions. The undisputed testimony shows the plaintiff had no right of action.

James De Garmo, the grandfather of the plaintiff who stood in loco parentis made an arrangement with defendant by which plaintiff lived with defendant, and under which they bore towards each other the relations and duties of parent and child.

A child cannot recover from the parent for services rendered in the absence of an express contract: Masteller's Appeal, 30 Pa. 473.

The implication of a promise arising from labor performed is rebutted by proof of a relation inconsistent with any understanding for compensation : Swires v. Parsons, 5 W. & S. 357 ; De France v. Austin, 9 Pa. 309.

The principle that a child is not entitled to demand wages from the parent in the absence of an express contract embraces also the liabilities of persons whom the law regards as standing in that connection although connected by no ties of blood : Lantz v. Frey, 14 Pa. 201 ; Duffey v. Duffey, 44 Pa. 399 ; Miller's Appeal, 136 Pa. 239.

Wages for domestic service are presumed to be paid at the periods customary at the time and in the neighborhood. The presumption grows stronger as each period of payment goes by : Carpenter v. Hays, 153 Pa. 432 ; Jarman's Appeal, 161 Pa. 151.

Conversely, where wages are not paid and plaintiff has made no demand for wages, the presumption is that wages were not expected by the plaintiff—that there was no contract to pay wages.

The plaintiff admits there was no contract for wages, and the arrangement under which she came to live with plaintiff was never changed by any agreement to compensate her for service rendered. Plaintiff sued on an implied contract. The family relation is established by the testimony, therefore there could be no recovery. The court should have given binding instructions by affirming defendant's seventh point : Neal v. Gilmore, 79 Pa. 421.

*B. A. Winternitz,* with him *John G. McConahy,* for appellee. —Generally where services are rendered by one person to another the law presumes a promise to pay what the services are worth. . . . Undoubtedly relationship either by consanguinity or affinity is a fact which tends to rebut the presumption which the law raises that a promise to pay is intended when personal services are rendered, but alone it does not overcome that presumption except in case of parent and child. In all other cases there must be evidence beyond the relationship that the creation of no debt was intended. If there be such evidence it must be submitted to the jury and it will be for them to say whether the presumption is overcome : Smith v. Milligan, 43 Pa. 107 ;

Curry v. Curry, 114 Pa. 367 ; Gerz v. Demarra, 162 Pa. 530 ; Kauss v. Rohner, 172 Pa. 481.

The existence of the family relationship alone does not prevent a recovery for services rendered.

Where there is evidence of a contract, if it be unwritten, it is always for the jury to say whether it establishes the claim: Neel v. Neel, 59 Pa. 347.

OPINION BY BEAVER, J., October 24, 1898 :

A father and daughter, living upon the farm of the former, received into their family a child who was an entire stranger to their blood. The child grew up in the family. When she was about nineteen years of age, the father died. Suit was brought by the child, who is the plaintiff here, against the defendant, who survived her father, for wages from the death of the father until and subsequent to the time of her marriage, when she left the defendant's house.

The plaintiff claimed on quantum meruit in assumpsit upon an implied contract arising from the fact that she rendered, and defendant accepted, her services in the family. There was no denial as to the fact of the services having been rendered, although there was some divergence in the views of witnesses as to their character and extent. The defense was based upon the fact that the defendant stood in loco parentis to the plaintiff.

The court below ruled, in answer to defendant's point, that " where a person is received into a family as a member of such family and not as a servant, as an object of charity and not as a hireling, the relation is never changed by legal implication into a relation giving a right to wages," and that " whenever persons stand to each other in a family relation, as distinguished from that of master and servant, the law implies no contract for wages." There is, therefore, no contest as to the law governing the case.

The single assignment of error is to the answer by the court below to defendant's seventh point, the point and answer being as follows : " Under all the evidence in this case, the verdict must be for the defendant. *Answer :* This point is refused, as there is a question of fact for the jury to determine as to what the relation was that existed between the parties in this case."

In what relation did the plaintiff stand to father and daugh-

ter when she came into the family? Who stood in loco parentis to the plaintiff—the father or the father and daughter together? Did the relationship between the plaintiff and defendant change at the death of the father? The defendant claimed in her testimony that she stood in loco parentis to the plaintiff, but the farm upon which she resided belonged to her father. He seemed to have provided for the family as long as he lived, and it was distinctly testified by the aunt of the plaintiff, who was present when she made her first appearance in the family, that Mr. Greer (the father) said, "If she would stay until she got old enough, he would pay her wages; the more she worked, the more he would pay her." The plaintiff, in answer to the question, "State whether or not you ever asked her (the defendant) for wages and how you asked her," said, "Well, we would be talking and I would ask if she wouldn't pay me wages and I pointed to one girl in particular that was living at her father's. He was paying her wages and I told her about this girl. She said I didn't need any money then, but I would be paid for all I did for her—for everything I did for her." It was not claimed that this constituted an express contract to pay wages upon which plaintiff could recover, but that it negatived the claim of the defendant that she stood in loco parentis to the plaintiff. The question, therefore, as to the relation which the plaintiff and defendant sustained toward each other was clearly one of fact which came within the province of the jury, and was properly submitted to them for their finding.

There is no complaint as to the manner in which this submission was made. The jury found, as under the facts of the case they could reasonably find, that, as between the plaintiff and defendant, the relationship claimed by the defendant did not exist and that, if such a relationship had ever existed, it terminated at the death of the defendant's father.

As we regard the facts of the case, it would have been error for the court below to have affirmed the defendant's seventh point. The case was properly submitted to the jury.

Judgment affirmed.

DISSENTING OPINION BY PORTER, J., October 24, 1898:

I cannot assent to the judgment of affirmance in this case. The plaintiff claims from the defendant, as shown by the

pleadings, $1,146, being for work and labor alleged to have been performed for the defendant, and at her request and direction, and to be worth the sum of $6.00 per week from April 10, 1891, to December 12, 1894. By her testimony she reduces the claim by asserting that in her opinion the labor was worth $3.50 or $4.00 a week. She claims on the basis of the presumption that where work and labor are done by one for another, the law implies a promise to pay what the services are reasonably worth. The defendant meets the demand by evidence showing that she stood to the plaintiff in loco parentis.

The defendant being a single woman, lived with her father on a farm. In January, 1881, the grandfather of the plaintiff requested the defendant and her father to take charge of the plaintiff, who was then eight years old. This they somewhat unwillingly did, and from that time until December, 1894, the plaintiff was treated, as the evidence shows, as a member of the family. It is true that, as the child grew older, she performed many and arduous duties, but these were participated in by the defendant herself, and were only those which any female member of a farmer's family might be expected at times to perform. She was sent to school and to church, and instructed in housewifely arts. She was cared for during slight illness and given medical care. She was clothed and given small amounts as spending money, and when she married was supplied with clothing.

In April, 1891, the father of the defendant died, and thereafter the plaintiff and defendant continued to live on the farm as theretofore. The claim of the plaintiff runs from the death of the defendant's father. Why this date should have been fixed by the plaintiff it is difficult to see, since she testified that after his death she continued to do the same work as before, and explicitly says that she made no agreement with the defendant at all at that time. After her marriage when she left the defendant's family, she made no demand for wages, but subsequently brought suit without notice. The error assigned is that the court below erred in not directing a verdict for the defendant.

The sole question to be determined is, whether the testimony in the cause shows that the defendant stood toward the plaintiff in such a family relation as rebutted the implied promise to pay for the labor performed. The suit is based solely on the implied promise and not on any expressed contract.

In this case the child was received into the family somewhat unwillingly by the defendant. Her act bears the impress of a charitable intent in the first instance. The family relationship existed for a long period. During most of the time it can scarcely be conceived that the services rendered were an equivalent for the care and maintenance of the plaintiff. Indeed, she in effect concedes this when she fixes the period at which her claim for wages begins to run. The family relationship was shown with great clearness. It existed up to the time the plaintiff left the defendant's house. It is true that the plaintiff testified to some conversation with the defendant during the period covered by her claim, showing that she requested some payment and received the reply that she would be paid for all she did. If, however, a relation tantamount to that of parent and child existed, such a conversation cannot be regarded as a contract, for the services to be rewarded were only those due from a child living with its parent. Nor was it sufficient to carry the question of the relationship to the jury.

We find among the authorities furnished to us but one in which no relationship by blood or marriage existed. In Appeals of Fross and Loomis, 105 Pa. 266, a claim was made by one who had been taken into the defendant's family under circumstances similar to those shown in the present case. In that case Mr. Justice CLARK says: " Although in general proof of services rendered or labor performed by one person for another, raises an implied promise to pay, in this case the established relation of the parties repels the idea of a contract. Matilda Harris was a member of the family of Mr. Blaine; he was to her in loco parentis; she was treated as a child; the implication which would otherwise arise is thus fully rebutted. The transaction between her and the decedent a week or two before his death, cannot be regarded as a contract, as it lacks the essential element of a valid consideration. Although she was, as Mr. Blaine confessed, 'a dutiful child' to him, and doubtless deserved not only his gratitude, but perhaps a more substantial reward, there was no legal obligation upon him to pay her any thing; he owed her nothing more than he would have owed his own child, under the same circumstances, and, as a general rule, an express promise cannot be supported by any consideration, wholly past and executed, from which the law could not imply a promise."

From this it will be seen that a family relation may be created between persons originally strangers, which even though accompanied by some long postponed assurance of compensation, will rebut the obligation to pay otherwise implied by law.

There is reason for this. Primary motive and subsequent conduct both indicating a charitable intent, the benefactor should not after conferring substantial benefit, in the earlier years of the life of the beneficiary, be met by an obligation to make payment based upon an implication founded in the law. It is not imposing on the beneficiary any inequitable burden to require, in order to a recovery, direct and convincing proof of a change of relation by express agreement of the parties.

I am strongly of opinion that the court below erred in not directing a verdict for the defendant.

ORLADY, J., concurs in above dissenting opinion.