# Haddock *v.* Plymouth Coal Co., Appellant.

*Receivership—Compensation of Receiver—Trust Company—Interest on deposit—Surcharge.*

1. A percentage allowance to a trust company as compensation for its services as receiver during a period covered by its fourth and final account will not be reversed as being unreasonable or contrary to an alleged agreement under which such services were to be performed at a fixed sum per year, where such compensation was fixed by the court, after hearing, at a most reasonable figure, and where the evidence disclosed either that the alleged agreement was never consummated or that it was subsequntly waived.

2. A trust company which acts as receiver will not be surcharged with interest upon receivership moneys deposited in its own bank, in a business account, subject to check, where it appears that such .deposit was made in good faith, with the knowledge and consent of the company whose. affairs were being administered and of its creditors, and was justified by the nature of receiver's duties; that any benefits accruing to the trust company therefrom were considered in making claims for compensation; that no ascertainable profits were derived therefrom; and that in view of the circumstances it was not negligent in the receiver not to charge itself with such interest.

*Appeals—Trusts and trustees—Receiver—Accounts—Exceptions—Assignments of error.*

3. On an appeal from a decree of the Common Pleas dismissing exceptions to an account of a receiver, the appellate court will not consider any question not raised by an exception to the account and made the subject of an assignment of error. The discussion of any such question by counsel for the appellant is entirely out of place.

4. On such an appeal where one of the exceptions raised an objection to the amount of the fee of receiver's counsel, but such objection is not referred to in the statement of the questions involved in the appellant's paper-book, .and the objection is not seriously pressed, the assignment of error relating to it will be overruled; and this is especially so where the allowance by the lower court was apparently reasonable and moderate.

Argued Apr. 9, 1912.   Appeal, No. 336, Jan. T., 1911, by defendant, from decree of C. P. Luzerne Co., May T., 1902, No. 2, in case of J. C. Haddock v. The Plymouth Coal Co.   Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ.   Affirmed.

Bill in equity for appointment of a receiver.
Exception to fourth account of receiver.
The facts appear in the opinion of the Supreme Court.

*Errors assigned,* among others, were to receiver's findings of fact and to the decree of the court.

*Wm. C. Price,* with him, *Joseph Phillips,* for appellant, cited: Schwartz v. Keystone Oil Co., 153 Pa. 283; Dolan's Est., 15 Pa. Superior Ct. 20.

*B. R. Jones,* with him, *Thos. Atherton,* for appellee.

OPINION BY MR. JUSTICE BROWN, July 2, 1912:

On March 14, 1902, the People's Bank of Wilkes-Barre, authorized by its charter to execute trusts of all sorts, was appointed receiver of the Plymouth Coal Company. In consequence of the general strike of the anthracite miners then in progress, it was unable, during the first six months of its receivership, to do much in operating the mines of the company. During that period its efforts were chiefly directed to the conservation of the property, which involved an expenditure of nearly $60,000 in excess of receipts. At the time of its appointment it was, and for several years prior thereto had been, the trustee for bondholders secured by a mortgage on the property of the coal company. The total indebtedness of that company at the time the receiver was appointed was $681,000, in which was included unpaid bonded indebtedness secured by the mortgage, amounting to $238,000. At the close of the miners' strike it was deemed advisable that the corporate prop-

erty should be transferred by the bank, as receiver, to itself as trustee under the mortgage, and that mining operations should be carried on by it as trustee until the bondholders were paid. Such a transfer was accordingly made October 26, 1902, and thereafter the bank, as trustee, conducted the mining operations of the company until April 1, 1905, when the last of the bonded indebtedness was paid off. On that day the bank resumed charge and control of the property as receiver, and continued mining operations until March 26, 1909, when the receivership was terminated and the Plymouth Coal Company again came into possession and control of its property. On June 2, 1909, the appellee filed its fourth and final account as receiver, and the exceptions to it, as disposed of by the court below, are the subjects of the assignments of error, upon which we are to pass on this appeal. But two exceptions were originally filed to the account, and they were as follows: "1. To the item wherein the accountant claims credit for $11,466.30 for receiver's commissions, same being one per cent. of $1,146,623.05, as being excessive, exorbitant and unearned. 2. To the item of $1,500 for counsel fees for receiver's counsel, same being excessive, exorbitant and unearned." Subsequently, by leave of court, the following third exception was filed: "Accountant has failed to charge itself with profits arising from the use in its banking business of trust funds received by it as receiver and trustee and mingled with its general banking funds, or to charge itself with interest for the use of such money." The second and third exceptions were dismissed and the first sustained to the extent of reducing the receiver's compensation from $11,466.30 to $9,975.62. As these were the only exceptions filed to the account, raising the only questions passed upon by the court below, counsel for appellant seem to misunderstand the scope of this appeal in insisting, in their printed brief, that the appellee ought to be largely surcharged because it had not been active,

but remained neutral in certain litigation over a sales contract which the coal company had entered into with a sales agent. No such question having been raised in the court below, and no such question being raised by any one of the seventeen assignments of error, a discussion of it by counsel for appellant in their printed brief is entirely out of place.

The first complaint of the appellant is over the allowance of $9,975.62 as commissions or compensation to the appellee for its services as receiver during the period covered by its fourth and final account. During that period of one year and nearly four months it received the sum of $1,146,623.05, upon which it charged one per centum. Appellant's contention is that the compensation ought to have been on the basis of only $1,000 per year, in view of what it alleges was an agreement on the part of the appellee to serve for such compensation as receiver from April 1, 1905,—the date upon which it relinquished control of the coal company's property as trustee in the mortgage. As evidence of such an agreement the appellant offered a letter, addressed to the attorneys for the creditors of the coal company by the counsel for the receiver, of which the following is a copy: "January 6, 1906. Messrs. W. S. McLean and S. J. Strauss. Gentlemen: The suggestion of the committee of the board of directors of the People's Bank made at the conference with you, had last Monday, to the effect that the bank would probably be willing to serve as receiver of the Plymouth Coal Co., for an annual compensation of $1,000, beginning April 1, 1905, has been ratified and approved by the board of directors, at their meeting held this morning, and I am now authorized to say that unless some extraordinary conditions or exigencies should. arise, largely increasing the labors and responsibilities of the bank, none of which are now foreseen, the bank would be willing to accept in lieu of commissions, as receiver of the Plymouth Coal Co., the sum of $1,000 annually, beginning

April 1, 1905.   Yours respectfully, Thomas H. Atherton, of counsel for the receiver." The court below, however, found as follows: "We find nothing in the notes of testimony indicating that this proposition was accepted by Messrs. McLean and Strauss on behalf of the creditors they represented. Mr. Atherton testifies that his letter 'was written as a suggestion of compromise under a new arrangement'—that on July 9, he received a letter from Mr. Strauss and Mr. McLean, and that the suggestion 'was practically declined by them.' (The letter of July 9 appears to have been offered in evidence, but we are unable to find it among the papers submitted to the court and no copy of it appears in the notes of testimony)." We have not been convinced, after our own review of the testimony, that this finding was error, and it may, therefore, be regarded as disposing of the alleged agreement by the appellant to serve as receiver at an annual compensation of $1,000; but, apart from this finding, there is an undisputed record fact in the case which shows conclusively that, even if there ever had been such an agreement, the appellant waived it on February 4, 1908, when, by its agreement, the first three accounts filed by the appellee as receiver were confirmed absolutely by the court. In the third account, which covered the period from June 1, 1907, to January 24, 1908,—less than eight months— the receipts of the appellee as receiver amounted to $521,988.22, and upon this sum it charged a commission of one per centum, amounting to $5,219.88. This charge for compensation was made more than two years after the writing of the letter upon which the appellant relies as evidence of an agreement that the compensation of the receiver should be but $1,000 a year, and the charge, as made in the account, was allowed by agreement of the appellant, through its president, in open court, as the records of the court show. In attempting to explain away this agreement by the appellant, which confronts the effort of its counsel to show that the letter

of January 6, 1906, was an agreement that the compensation should be only $1,000 a year, they refer to the testimony of J. C. Haddock, president of the coal company, in which he stated his reason for having agreed to the charge made for compensation in the third account. What may have induced Mr. Haddock, as president of his company, to agree in open court that the appellee should be paid $5,219.88 as compensation for its services during a period of less than eight months is not for our consideration on this appeal. We only know that the records show his agreement, which was followed by the absolute confirmation of the account in pursuance of it, and that account is conclusive of all things embraced within it: McLellan's Appeal, 76 Pa. 231; Appeals of Fross and Loomis, 105 Pa. 258.

With the letter of January 6, 1906, out of the case, the only question that remains is as to the alleged excessiveness of the compensation allowed to the appellant by the court below, whose duty it was to fix it, in the absence of an agreement as to what should be charged. During the seven years that the bank conducted the affairs of the appellant, as its receiver and trustee in its mortgage given to secure bondholders, the gross receipts of the business amounted to $5,582,041. The indebtedness paid off by the appellee was $974,980. For all its services during that period as trustee and receiver, rendered through the medium of a committee of its directors, composed of men of large experience in the successful administration of extensive coal mining operations in the anthracite field, its charges for commissions were $44,311.34. In its three accounts filed as trustee it charged as compensation eighty-seven one-hundredths of one per centum upon its gross receipts, and these charges were not objected to in any instance, but each account was absolutely confirmed by agreement, in open court, of all parties in interest. The compensation charged by the appellee in its last account was reduced to the percentage which it had charged as

trustee, and, in considering the responsibility assumed by it, the magnitude of its undertaking and its success in wiping out nearly a million dollars of indebtedness, the compensation allowed by the court below cannot be said to be excessive. On the contrary, it is the most moderate of which the writer has any knowledge. It was fixed by the court after hearing all the testimony in support of the exceptions to the account, and at a figure most reasonable, at least so far as the appellant was concerned. It was, therefore, hardly necessary for the appellee to invoke the rule as to interfering with the compensation of a receiver when fixed by the court. "When the court has fixed the compensation after the hearing of testimony and the allowance made is warranted by such testimony and appears to be reasonable, the exercise of the discretion of the court will not be interfered with on appeal": High on Receivers (4th Ed.), page 922.

Appellant's complaint of the failure of the court below to sustain its third exception to the receiver's account is sufficiently answered by the three facts found in the opinion dismissing that exception. These facts were fully sustained by the testimony, and we need add nothing to them in dismissing the sixteenth assignment of error. They are as follows: "1. The depositing of trust funds by the receiver in its own bank, in a business account, subject to check, was done in entire good faith and with the knowledge and acquiescence of the Plymouth Coal Co. and its creditors, was justified by the nature of the receiver's duties, and such benefits if any, as accrued to the bank therefrom were considered in making the claims for compensation in the several accounts filed and confirmed by the court; and objections to the amounts so claimed were made by the president of the Plymouth Coal Co. to the effect that they were excessive, partly at least, because of the fact that 'the bank had the use of the balances in favor of the receiver' on its books (testimony of Mr. McLean); but it

does not appear that any objection was made to the fact of the use of such balances. 2. It has not been shown that any ascertainable profits were derived by the receiver from the use in its banking business of the trust funds so deposited. 3. In view of the hazardous nature of the business of secondary mining in which the receiver was engaged, the necessity for the retention of working capital to the extent of, say $30,000.00, available for use at any time, the fluctuating nature of the daily balances, and the apparent acquiescence of parties in interest in such use of these balances in its banking business as it was able to make, together with the rules of its own and other institutions doing a savings bank business as to interest on deposits, we cannot say that the receiver was guilty of such negligence as would justify a surcharge in that regard."

Appellant's statement of the questions involved on this appeal does not include the allowance of $1,500 as counsel fees, which was the subject of the second exception to the account. The allowance was reasonable and moderate, and, as the formal objection to it does not seem to be seriously pressed, it is overruled.

All of the assignments of error are dismissed and the decree is affirmed at appellant's costs.