## Gaston's Estate

*Christie D. Shull* and *Sidney Newbourg*, for accountant.

*Karl Wagner*, guardian ad litem, p. p.

*Karl A. Wagner* and *James A. Donovan*, for exceptants.

DAVIS, P. J., October 20, 1947.—This matter comes before the court on exceptions to the report of Dorothy Stroh Tisdale, an auditor appointed to pass on the second and final account in the Estate of Rosamond Pinchot Gaston, late of Milford, Pike County, Common-

wealth of Pennsylvania, deceased, schedule of distribution and exceptions filed thereto. . . .

## III.

We now pass to a consideration of the question: Is the accountant entitled to commission on rents collected on real estate? The auditor found that he was not entitled to commissions on rent collected and struck from the account the rents received from real estate and the expenditures made on account of real estate. Under the facts in this case we do not agree with the conclusion reached by the learned auditor.

All of the real estate in question was situate in the State of New York. From authorities cited to us by counsel for accountants we conclude that a domiciliary administrator in the State of New York has the right to manage real estate and collect rents.

"The administrator of a decedent who dies after the thirty-first day of August, nineteen hundred and thirty, shall have power to take possession of the real property of such decedent, and any interest therein, and to manage the same and to collect the rent thereof. . . . Added L. 1929, c. 229, §2. Eff. Sept. 1, 1930.

### "Historical Note

"Note of Commission. Authority to take possession and collect accruing rents is made an incident to the appointment, but the power to sell, mortgage, or lease can be exercised only upon express approval thereof by the surrogate after citation to the persons interested. Combined Reports of the Decedent Estate Commission, Reprint Edition, p. 185": 13 McKinney's Consolidated Laws of N. Y., §123.

Counsel for accountants have cited no cases in this State showing the right of a Pennsylvania administrator to manage New York real estate, nor do we believe under ordinary circumstances he has such right.

It is well established in Pennsylvania that generally the administration of real estate is not to be included

in an administrator's account: Appeals of Fross et al. and Loomis et al., 105 Pa. 258. But as stated in Hoffman's Appeal, 185 Pa. 315, 317, citing Appeals of Fross and Loomis, supra, "It does not follow that there are no cases in which the facts are such as to make them an exception to the rule laid down." We believe this is the exceptional case.

After the death of Rosamond Pinchot Gaston, the accountant, father of decedent, and William Gaston, estranged husband of decedent and natural guardian and later general guardian of decedent's two minor sons, exceptants herein, conferred about the settlement of her estate, and decided the estate should be administered in Pennsylvania and the accountant should be the administrator. After qualifying as administrator the accountant took over the management of the New York real estate. At least some of this property was encumbered, and some of it required extensive repairs in order to preserve it for the estate. It all needed care and attention which was furnished by the accountant. William Gaston was fully informed as to what the accountant was doing and stood idly by and acquiesced therein without objection. These facts justify the finding that exceptants impliedly had agreed that the real estate should be administered by the accountant, and included in his account. When the parties agree, there is nothing to prevent the inclusion of assets derived from real estate in the account.

". . . We are also of opinion that where, as in this case, all the parties interested permit the real estate to be treated as assets of the estate, there is nothing to prevent the orphans' court from assuming jurisdiction of the account of the administrator with respect to such realty, especially where he himself has invoked the jurisdiction of said court": Hoffman's Appeal, supra, p. 320.

There is another reason for the administrator to account for assets derived from the real estate. On July 15, 1940, Amos R. E. Pinchot was appointed an-

cillary administrator in New York. Subsequently he was cited to account in the State of New York. The matter came on for hearing June 22, 1945, before Surrogate Foley. The magistrate refused to compel an accounting saying in part:

"The ancillary administrator was appointed here for the limited purpose of selling real estate located in New York. A sale was authorized and final distribution of the proceeds was made the subject of a formal order made by Mr. Surrogate Delehanty and dated January 8, 1941. The transaction as to the collection of other assets in New York occurred before the issuance of ancillary letters and was plainly made under the recognition of the right of the domiciliary administrator to reduce such assets to possession.

"Under such circumstances this court will not try disputes between a nonresident of this state and the domiciliary representative. Jurisdiction properly belongs in the courts of Pennsylvania. No circumstances have been shown to justify the entertainment of jurisdiction here. On the other hand, under the decisions above cited every reason exists for the exercise of my discretion in denying the application and remitting the petitioner and his children to the domiciliary jurisdiction. The pertinent rules and tests which apply in these situations were stated by me in Matter of Meyer (supra)."

The State of New York having refused to entertain an accounting, in what jurisdiction could the administrator account except in Pennsylvania? We fail to see that an advantage would accrue to the estate and minor exceptants if any accounting were made in New York. In fact an accounting in New York would entail additional expense that would have to be borne by the estate. Courts should always jealously guard the rights of beneficiaries in an estate. If the whole matter is not determined in this proceeding a subsequent accounting would be a duplication of what has already been done. Further litigation might well ensue all to

the detriment of the beneficiaries of the estate. Therefore, in the exercise of the equitable powers of the court, and under the unusual circumstances of this case we hold that it was proper for the administrator to include in his account rents received from real estate and expenditures made on account thereof. Having determined that the administrator under the circumstances in this case had the right to manage the real estate and account therefor, it is axiomatic that he is entitled to a reasonable and fair compensation for services rendered.

## IV.

What is the proper basis for fixing a fiduciary's commission? The auditor found the proper basis was the inventory value. The only real controversy is whether the inventory value or the value fixed for inheritance tax purposes should be used. In this case the inheritance tax value was $20,000 higher than the inventory value. We would be inclined to take the value fixed for inheritance tax purposes as representing the true value of the estate at the date of death when this amount differs from the inventory. Practically, we know that this value is determined only after a careful consideration of the matter by representatives of the estate and of the taxing department. Errors of fact or judgment represented in the inventory are corrected in the inheritance tax appraisement. However, our appellate courts seem to take the contrary view. Therefore, we adopt the opinion of the learned auditor on this point as the opinion of the court.

## V.

We now consider the administrator's commissions. The auditor found the work and the responsibility of this administrator were beyond the average and warranted a commission of five percent. We would agree with the auditor if all of the work incident to the administration had been done by the administrator.

However, the record discloses that a part of the work had been delegated to agents who received a commission for their services. Therefore, we feel impelled to take this fact into consideration in fixing the compensation: Reid's Estate, 250 Pa. 103, followed in Taylor's Estate, 281 Pa. 440, sets forth the basis on which to determine compensation as follows (p. 104) :

"From an examination of the authorities relative to the amount of commissions paid to executors, it appears that the labor and responsibility of each particular case determine what is a fair compensation for services performed. It is not a question whether or not the services are worth two, three, four, five, or more per cent., but what is a fair and just compensation for the administration of the estate by the accountants."

Arlington W. Williams, Esq., accountant's expert witness, testifies $9,900 would be a fair and reasonable fee.

After carefully reading all the testimony and considering the findings of fact made by the auditor in relation to this phase of controversy, we are convinced that a commission of four percent would reasonably and fairly compensate the administrator for services rendered. In arriving at our conclusion we have considered Gelbach's Estate, 29 Pa. Superior Ct. 446, and the other cases cited by the attorneys for the administrator. Therefore, we would compute the administrator's commission as follows:

Total amount of inventory and supplementary inventory (auditor's report, page 24) ........................ $137,816.09

Income received (page 1, account) ... 102,317.01

Total ........................ $240,133.10

Four percent of $240,133.10, or $9,605.32, being the total amount of commission allowed the administrator.

The accountants request to be surcharged for commissions paid United States Trust Company in the

sum of $909.40. There has been paid on account of commissions $6,207.76, leaving a balance due of $2,-488.16, which is awarded to the administrator.

## VI.

We now pass to a consideration of the matter of attorneys' fees. The auditor found the fees charged by attorneys for accountants were not excessive, but should be proportionately reduced because of the unauthorized management of real estate. We have held that under the circumstances of this case the management of the real estate by the accountant was permissible. Therefore, reasonable fees for services rendered in the management of the real estate should be allowed. Huffman Estate (No. 3), 349 Pa. 59, states the basis for determination of attorney fees:

" 'The things to be taken into consideration in determining the compensation to be recovered by an attorney are the amount and character of the services rendered, the labor, the time, and trouble involved, the character and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and the standing of the attorney in his profession; to which may be added the general ability of the client to pay and the pecuniary benefit derived from the services.' " (p. 64.)

Arlington W. Williams, Esq., a member of the Monroe County bar, testified that in his opinion a fair and reasonable legal fee would be $7,500. The testimony shows that both the work and responsibility entailed in this estate were unusual and beyond the usual and ordinary services rendered in the settlement of an estate of this size. The record discloses that the attorneys performed their duties competently, carefully and conscientiously over a long period of time. We believe that their charge of $7,156.67 was fair and reasonable and a proper charge which we approve. The sum of $4,656.67 has been paid on account of attorneys' fees, leaving a balance of $2,500, which is hereby allowed. . . .